## UNITED STATES ex rel. PALEAIS v. MOORE, U. S. Marshal.

(District Court, E. D. New York. April 23, 1923.)

1. **Bankruptcy ⚖︎136(1)—Where, after order directing bankrupt to turn over books to receiver, trustee was appointed, failure to turn over books to either was contempt.**

   Where, after order directing bankrupt to turn over his books to the receiver in bankruptcy was entered, a trustee was appointed, failure to turn over the books to either the receiver or the trustee was a contempt, and the trustee was the proper person to move to punish therefor; the trustee being the real party aggrieved.

2. **Habeas corpus ⚖︎22(2)—Bankrupt concluded by appeal from order to turn over his books.**

   Where bankrupt's appeal from order to turn over his books on the ground of his inability to comply was unsuccessful, he could not, on habeas corpus, after being imprisoned for contempt for failing to obey the order, attack the order on the ground of his inability to comply therewith, without showing any change in his ability to comply with the order between the time it was made and the time when he was committed for contempt.

3. **Courts ⚖︎340—Conformity Act not applicable to punishment for contempt in bankruptcy.**

   Conformity Act (Rev. St. § 914 [Comp. St. § 1537]) held inapplicable to proceedings in bankruptcy to punish for contempt.

4. **Constitutional law ⚖︎273—Commitment for contempt held due process of law.**

   Commitment for contempt in bankruptcy proceedings having been ordered after notice of hearing, opportunity to be heard, and a finding on the facts after such hearing, such order was made by due process of law.

5. **Habeas corpus ⚖︎27—Commitment for contempt reviewable only for lack of jurisdiction.**

   Order of commitment for contempt in bankruptcy proceedings, under Bankruptcy Act, § 2, subd. 13 (Comp. St. § 9586), is reviewable on habeas corpus only on the ground of lack of jurisdiction by the committing court.

Habeas Corpus. Proceeding by the United States, on the relation of Adolph Paleais, against Jesse D. Moore, United States Marshal. Writ dismissed, and relator remanded, but bail fixed.

J. G. M. Browne and Barnett E. Kopelman, both of New York City, for relator.

Archibald Palmer, of New York City (David B. Tolins, of New York City, of counsel), for respondent.

CAMPBELL, District Judge. The relator asks for his discharge on a writ of habeas corpus issued herein. Relator is now imprisoned on an order committing him for contempt in a proceeding in bankruptcy, and it may be well to briefly state the steps taken leading up to the making of said order.

On July 21, 1922, an involuntary petition in bankruptcy was filed against the relator, and James Gray was appointed as receiver in said bankruptcy proceedings and qualified as such. On August 12, 1922, the relator was adjudged an involuntary bankrupt.

On August 24, 1922, upon the petition of said receiver, an order to show cause was issued, requiring the relator to show cause in person before the District Court why an order should not be made, ordering

and directing him to deliver forthwith to the said receiver in bankruptcy all the relator's books of account by him kept in the course and conduct of his business, consisting of bill books, cash book, ledger, bills, etc., and why in the alternative, such other and further relief as to the said District Court should seem just and proper in the premises should not be granted.

The relator opposed the granting of the said application, and filed an affidavit in and by which he alleged that said books and papers had been stolen and had not been returned. The matter was referred to a special commissioner, to take testimony and report, with his opinion thereon.

The special commissioner made and filed his report, in which he reported that the relator had not satisfactorily accounted for the disappearance of his books and records, and was therefore in the same position as if he had ignored the demand of the receiver, and that an order should be entered directing him to turn over to the said receiver his books and records.

On October 3, 1922, on notice to the relator, he having appeared by counsel and opposed, an order was made by this court, by Hon. Edwin L. Garvin, District Judge, in all respects confirming the said report of said special commissioner and ordering the relator, on or before 4 p. m., October 6, 1922, to turn over to the receiver his cash book, ledger, check book, bill books, note books, canceled vouchers, and unpaid bills.

On October 4, 1922, the relator filed in the office of the clerk of the United States Circuit Court of Appeals for the Second Circuit a petition to revise said order of October 3, 1922, and after consideration of said petition the said Circuit Court of Appeals affirmed said order. Lewis H. Saper was appointed trustee of the assets and effects of the above-named relator, bankrupt, and duly qualified as such trustee.

The relator did not obey the aforesaid order, and turn over said books and papers to the said receiver, nor did he turn them over to said trustee, and on March 8, 1923, the said trustee filed a petition, on which an order was granted, directed to the relator, requiring him to appear and show cause why he should not be punished for contempt.

To said petition relator filed an answer repeating the allegation that said books and papers had been stolen from him and were missing, and that his inability to comply with said order was due to this alone, and not to any willful, intentional, or contumacious refusal on his part to comply with said order, and also opposed on the ground that the application to punish for contempt was by petition of the trustee, and not the receiver, whereas, the order of October 3, 1922, directed that the books and papers be turned over to the receiver, and not to the trustee, and that said receiver had in the interval been superseded by the trustee, and on the further ground that the petition of the trustee did not show that any injury had been caused by relator's alleged inability to turn over said books and papers.

On the return of said order to show cause the relator appeared by counsel and opposed the granting of the order to punish the relator for contempt on all the grounds set forth in his said answer. On March 17, 1923, Hon. Edwin L. Garvin, District Judge, granted said motion, and in a memorandum thereafter filed said, among other things:

"Injury has undoubtedly been sustained by the estate through the failure to obey the order of the court."

On March 22, 1923, the said court, by Hon. Edwin L. Garvin, District Judge, made an order granting said motion and ordering, adjudging and decreeing that the relator was guilty of contempt of this court and that he be forthwith committed to the Raymond Street jail, located in the borough of Brooklyn, county of Kings, state of New York, Eastern district of New York, to be there confined and detained as punishment for his contempt in failure to comply with the terms of the order of this court, and it was further ordered that he be detained in said jail until he should have purged himself of such contempt, or until the further order of this court, and in said order it was further provided that the relator might purge himself of said contempt by forthwith turning over the books and papers, therein specified, called for by said order of October 3, 1922, to his trustee in bankruptcy.

The relator was taken into custody by the marshal and confined in jail, and relator then made a motion before the Supreme Court of the United States for leave to file a petition for a writ of habeas corpus, but said motion was denied, without prejudice to an application to the District Court. Relator then sued out a writ of habeas corpus in the District Court, to which the marshal has made return that relator is held under said order of March 22, 1923.

The relator asks for his discharge on the alleged grounds that the order of commitment is void, and that the court was without jurisdiction to make the same, and separately states and specifies the grounds of his objections by the letters (a), (b), (c), (d), (e), and (f), and I will consider them in their order.

[1] Specifications (a) and (b) may be considered as one because they in effect allege that, the order to turn over having directed the turning over to be to the receiver, there could be no contempt on the part of the relator in not having turned over to the trustee, and that the trustee was not the proper person to move to punish for contempt, because he was not a person aggrieved. At first glance there seems to be some merit to this contention, but on a careful consideration thereof the matter appears in a different light.

Undoubtedly, if the relator had at any time after the making of the order of October 3, 1922, turned over the books and papers to the receiver, he would have complied therewith, and, had he turned over the said books and papers to said receiver, it would have been for the benefit of the trustee. The receiver never had any title to the property of the bankrupt; he was merely entitled to the custody of the bankrupt's property as the representative of the court. In re Kleinhaus (D. C.) 113 Fed. 107. His duty was to hold the same until the trustee was appointed, because the order to turn over was made after the relator was adjudged a bankrupt, and it was then only necessary to appoint a trustee.

The trustee, on his appointment, took the title to all the assets and effects of the bankrupt, relator, which relator had on the day he was adjudged a bankrupt, which long antedated the date of the order to

287 F.—56

turn over; therefore the order to turn over to the receiver was in reality for the benefit of the trustee.

The relator claims that the trustee was a stranger to the proceedings brought by the receiver to obtain possession of the books and papers of the bankrupt, and therefore he could not move to punish the relator for failure to obey that order. This cannot be so, because the trustee is an officer of the court. In re Howard (D. C.) 130 Fed. 1004. The only purpose of the receiver, the representative of the court, in his efforts to obtain the books and papers, was to protect the estate, title to which would be in the trustee on his appointment.

I have been unable to find any reported case in point; the only case cited being that to which the relator calls attention, Ex parte Dickens, 162 Ala. 272–282, 50 South. 218, which was not a decision in a bankruptcy matter, and it seems to me that a distinction may easily be drawn between receivers who take title to property, and receivers in bankruptcy, who take no title, but act only as custodians; the trustees, when appointed, being vested with the title which the bankrupts had on the date when they were adjudged bankrupts.

The real party aggrieved by the failure of the relator to turn over the books and papers was the trustee, and he properly moved to punish him for contempt, because the relator never turned over or offered to turn over the said books and papers, either to the receiver, trustee, the court, or any officer thereof. I therefore hold that the claims of the relator under said specifications are not sustained.

[2] Specification (c) in effect alleges that the order cannot be sustained, because relator claims he showed his inability to comply with the said order, and there was no finding that he was then able to comply with the order. This specification seems to me to require but little discussion and no citation of authorities, because the question of whether the books and papers had been stolen from the relator before the making of the order of October 3, 1922, and his ability to turn over had, after a hearing, been determined by said order of October 3, 1922, adversely to his contention and that order had been affirmed by the Circuit Court of Appeals, and thereby relator was concluded.

Relator did not show, or attempt to show, when opposing the order to punish him for contempt, any change whatever with reference to said property between the time of the making of the order to turn over of October 3, 1922, and the order to punish for contempt; therefore no further finding was necessary on that point. This claim was therefore not sustained.

[3] Specifications (d) and (e) may be considered together, as in them the relator in effect claims that the order of commitment cannot be sustained, because it does not comply with the requirements of the New York State Judiciary Law. This claim is based on the theory that the statute of conformity, Revised Statutes, § 914 (Comp. St. § 1537), is applicable because the proceedings and practice in applications to punish for contempts are not set forth at length in the Bankruptcy Act (Comp. St. §§ 9585–9656), and therefore the state statute relating to punishments for contempt should be followed.

If this court was bound to proceed under the state Judiciary Law in

punishing contempts arising under the Bankruptcy Act, then a serious question would arise, as there is no finding or adjudication in the order of commitment, as required by that law, that by the disobedience of the relator the rights of any one had been impaired, impeded, prejudiced, or defeated; but I am of the opinion that the act of conformity does not apply to the matter at bar, and therefore that such adjudication was not required in the order of commitment. Section 914 of the Revised Statutes (Comp. St. § 1537) reads as follows:

"The practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the [Circuit and] District Courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in *like causes* in the courts of record of the state in which such [Circuit or] District Courts are held, any rule of court to the contrary notwithstanding." The underlining of the words "like causes" being ours.

The section excepts equity and admiralty causes, but provides, as to other civil causes, the District Courts shall conform as near as may be to the practice, pleadings, and forms and modes of proceeding existing at the time in "like causes" in the courts of record of the state within which such District Courts are held, and it would seem that by the use of the words "like causes" it was intended to eliminate proceedings in bankruptcy and contempts in such proceedings from the operation of the statute of conformity, as there are no such "like causes" as bankruptcy of which the state courts have jurisdiction, and therefore there could be no practice or procedure in state courts in "like causes" to which the federal courts could conform.

In re Barry (C. C.) 42 Fed. 113, cited by the relator, is not an authority supporting his contention that the statute of conformity applies, because in that matter the Bankruptcy Act was not in question, but a writ of habeas corpus was sued out to determine which parent should have the custody of a child, a subject of which the state courts had jurisdiction.

[4] The commitment in the matter at bar having been ordered after notice of hearing, opportunity to be heard, and a finding on the facts after such hearing, all of the rights of the relator under the federal laws were protected, and such order was made by due process of law. The claim of said specification has not been sustained.

Specification (f) in effect alleges that relator was ordered to be confined in a criminal jail for a civil contempt. A distinction is made in the federal courts between civil and criminal contempts, and we may assume, without argument, for the purposes of this motion, that the contempt in the instant matter is a civil contempt; but relator is in error in his claim that the Raymond Street jail is not a place for the confinement of civil prisoners.

The civil and criminal jails of this county are both located on Raymond street; the civil jail being on the corner of Raymond street and Willoughby street, with an entrance on Willoughby street, and the criminal jail immediately adjoining the civil jail and being next to the corner of Willoughby street. The civil or county jail is under the charge of the sheriff, a county officer, and is designated as the Kings

County jail; the criminal jail is under the charge of the department of corrections, a city department, and is designated as the City Prison.

All civil prisoners in Kings county are confined in the Kings County jail, which is located on the corner of Raymond street and Willoughby street, and the designation in the commitment of the place of confinement, while not precisely the designation of the county jail, is sufficiently clear to identify and fix the place of confinement of the relator as the county jail where civil prisoners are confined, and I understand that relator is confined in such civil jail. Therefore this specification is not sustained.

[5] The only ground upon which the order of commitment could be reviewed by me at this time would be that said order was void for lack of jurisdiction by the court to grant the same. Savin, Petitioner, 131 U. S. 267, 279, 9 Sup. Ct. 699, 33 L. Ed. 150; Stevens v. Fuller, 136 U. S. 468, 478, 10 Sup. Ct. 910, 34 L. Ed. 461; U. S. v. Pridgeon, 153 U. S. 48, 14 Sup. Ct. 746, 38 L. Ed. 631; Ex parte Davis (C. C.) 112 Fed. 139; Ex parte O'Neil (C. C.) 125 Fed. 967. I find, however, that the court had full jurisdiction, under section 2, subd. 13, of the Bankruptcy Act (Comp. St. § 9586), to enforce obedience by the bankrupt (relator) to all lawful orders by fine and imprisonment, and that the order of commitment of the relator was valid, and that the court had jurisdiction to make the same.

The writ of habeas corpus is therefore dismissed, and the relator is remanded; but the relator may be admitted to bail in $5,000.